Slip Op. 12-103

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| A.L. PATTERSON, INC., <br><br>　　　　　　　　Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>　　　　　　　　Defendant, <br><br>and <br><br>VULCAN THREADED PRODUCTS, INC., <br><br>　　　　　　　　Defendant-Intervenor. | Before: Richard W. Goldberg, Senior Judge <br>Court No. 11-00192 <br><br>**PUBLIC VERSION** |

OPINION

[Plaintiff's Motion for Judgment on the Agency Record under USCIT Rule 56.2 is GRANTED.]

Dated: August 6, 2012

*James R. Cannon, Jr.*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for plaintiff.

*Jane C. Dempsey*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, Assistant Director. Of counsel on the brief was *Daniel J. Calhoun*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, D.C.

*Frederick P. Waite* and *Kimberly R. Young,* Vorys, Sater, Seymour and Pease LLP, of Washington, D.C., for defendant-intervenor.

Goldberg, Senior Judge:  Plaintiff A.L. Patterson, Inc., ("Plaintiff" or "Patterson") challenges the Department of Commerce's ("Commerce" or "Department") final scope ruling that the coil rod Patterson imports from China is within the scope of *Certain Steel Threaded Rod from the People's Republic of China: Notice of Antidumping Duty Order*, 74 Fed. Reg. 17,154 (Apr. 14, 2009) (Order).  Specifically, Patterson raises one issue on appeal: whether Commerce's determination that the scope of the antidumping order includes Patterson's product is supported by substantial evidence and is otherwise in accordance with law.

For the reasons discussed below, Plaintiff's Motion for Judgment on the Agency Record is granted.  The Court remands the final scope ruling to Commerce for redetermination in accordance with this opinion and order.

**BACKGROUND**

Patterson imports an engineered steel coil rod ("coil rod") from China.  On January 19, 2011, U.S. Customs and Border Patrol ("Customs") issued a *Notice of Action* to Patterson indicating that its coil rod imports would be classified under subheading 7318.15.5051 of the Harmonized Tariff Schedule of the United State (HTSUS).  This subheading covers "Continuously threaded rod: Of alloy steel." *Certain Steel Threaded Rod From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review,* 76 Fed. Reg. 68,400, 68,402 (Nov. 4, 2011) ("Final Partial Rescission"). Prior to this notice, Patterson imported engineered steel coil rod under subheading 7316.00.0000 HTSUS, covering "[a]nchors, grapnels, and parts thereof, of iron or steel."  The *Notice of Action*

further indicated that the coil rod would now be "subject to Anti-Dumping Duty under case A570-931 @ 206%." Pl.'s Br. at 4 (citing PR Doc. 436, Ex. 1, App. B).

The Scope of the antidumping duty order states:

The merchandise covered by this order is steel threaded rod. Steel threaded rod is certain threaded rod, bar, or studs, of carbon quality steel, having a solid, circular cross section, of any diameter, in any straight length, that have been forged, turned, cold-drawn, cold-rolled, machine straightened, or otherwise cold-finished, and into which threaded grooves have been applied. In addition, the steel threaded rod, bar, or studs subject to this order are non-headed and threaded along greater than 25 percent of their total length. A variety of finishes or coatings, such as plain oil finish as a temporary rust protectant, zinc coating (i.e., galvanized, whether by electroplating or hot-dipping), paint, and other similar finishes and coatings, may be applied to the merchandise.

Included in the scope of this order are steel threaded rod, bar, or studs, in which: (1) iron predominates, by weight, over each of the other contained elements; (2) the carbon content is 2 percent or less, by weight; and (3) none of the elements listed below exceeds the quantity, by weight, respectively indicated:
- 1.80 percent of manganese, or
- 1.50 percent of silicon, or
- 1.00 percent of copper, or
- 0.50 percent of aluminum, or
- 1.25 percent of chromium, or
- 0.30 percent of cobalt, or
- 0.40 percent of lead, or
- 1.25 percent of nickel, or
- 0.30 percent of tungsten, or
- 0.012 percent of boron, or
- 0.10 percent of molybdenum, or
- 0.10 percent of niobium, or
- 0.41 percent of titanium, or
- 0.15 percent of vanadium, or
- 0.15 percent of zirconium.

Steel threaded rod is currently classifiable under subheading 7318.15.5050, 7318.15.5090, and 7318.15.2095 of the HTSUS. Although the HTSUS subheading is provided for convenience and customs purposes, the written description of the merchandise is dispositive.

> Excluded from the scope of the order are: (a) threaded rod, bar, or studs which are threaded only on one or both ends and the threading covers 25 percent or less of the total length; and (b) threaded rod, bar, or studs made to American Society for Testing and Materials (ASTM) A193 Grade B7, ASTM A193 Grade B7M, ASTM A193 Grade B16, or ASTM A320 Grade L7.

*Order*, 74 Fed. Reg. at 17,155. The Order was subsequently altered to include subheading 7318.15.5051 of HTSUS, which covers "Continuously threaded rod: Of alloy steel." *See Final Partial Rescission*, 76 Fed. Reg. at 68,402.

On February 2, 2011, Patterson submitted an "Application for a Scope Ruling Excluding Engineered Steel Coil Rod for the Scope of the Antidumping Duty Order" ("Scope Request") to Commerce. Plaintiff argued that coil rod is not within the definition of "steel threaded rod" described in the Order and is part of a different industry than steel threaded rod. Plaintiff noted that coil rod producers are part of the "concrete accessories industry" and argued that Vulcan, the threaded rod producer that petitioned Commerce for an antidumping order, is part of the "threaded rod industry," which serves a distinct and separate market. Pl.'s Br. at 15, 17. Patterson emphasized that coil rod is distinct from steel threaded rod: coil rod is used in the concrete accessories market, whereas threaded rod is used in the construction market. Pl.'s Br. at 17. Vulcan's petition to Commerce did not specifically mention "coil rod" and coil rod was not part of Commerce's or the International Trade Commission's ("ITC") underlying investigations. Moreover, Patterson emphasized that Vulcan did not identify any of the three U.S. producers of coil rod in its petition, nor were they part of the ITC's investigation of injury or Commerce's determination of sales at less than fair value ("LTFV").

On May 24, 2011, Commerce issued its final scope ruling, declaring that the coil rod Patterson imports is within the scope of the antidumping ("AD") order. *Certain Steel Threaded Rod from the People's Republic of China: A.L. Patterson Final Scope Ruling*, A-570-932 (May 24, 2011) ("Final Ruling"). Commerce based its determination solely on the scope language of the Order.

In its Final Ruling, Commerce stated that the plain language of the scope of the Order was unambiguous, covering steel threaded rod with solid, circular cross sections, and threading along greater than 25 percent of the total length. Because the coil rod met these specifications and satisfied the requirement that the rod contain a carbon content of 2 percent or less, Commerce found that the coil rod was within the scope of the Order. *Final Ruling* at 5.

Thus, Commerce determined that the language of the order was dispositive. It explained that "although Patterson argues that coil rod was not considered in the petition, investigation, or ITC proceedings, the Department does not find that this factor outweighs the scope language, which indicates that coil rod was within the scope of the Order." *Final Ruling* at 5.

## **JURISDICTION**

Patterson brought this action under section 516A of the Tariff Act of 1930, under which an "interested party" is entitled to request the classification and rate of duty imposed upon imported merchandise. *See* 19 U.S.C. § 1516(a) (2006). This Court has exclusive jurisdiction over "any civil action commenced under section 516A of the Tariff Act of 1930." 28 U.S.C. § 1581(c). Accordingly, the Court has jurisdiction over this matter.

**STANDARD OF REVIEW**

This Court will uphold Commerce's scope determination "unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i) (1994)). "Substantial evidence is relevant evidence that, given the record as a whole, 'a reasonable mind might accept as adequate to support a conclusion.'" *Polites v. United States*, 35 CIT __, 780 F. Supp. 2d 1351, 1354–55 (2011) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)) (citations omitted). When reviewing agency determinations, findings, or conclusions for substantial evidence, this Court determines whether the agency action is reasonable in light of the entire record. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).

Commerce's regulations on scope determinations do not specify the precise process Commerce must use to decide whether the terms of the order are subject to interpretation. Thus, Commerce has discretion to determine its own process, but that discretion is not infinite. The process must be based on a permissible construction of the antidumping statute. *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984). In addition, Commerce must consider relevant evidence and its conclusion must be supported by substantial evidence. *Allegheny Ludlum Corp. v. United States*, 24 CIT 452, 479, 112 F. Supp. 2d 1141, 1165 (2000); *Arcelormittal Stainless Belg. N.V. v. United States*, Slip Op. 11-82, 2011 Ct. Int'l Trade LEXIS 82, at *36 (CIT July 12, 2011). "It is . . . well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the

Department's determination unsupported by substantial evidence." *Allegheny Ludlum*, 24 CIT at 479, 112 F. Supp. 2d at 1165.

Furthermore, although this Court gives significant deference to Commerce's interpretation of its own orders, "a scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004) (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094–95 (Fed. Cir. 2002)). Thus, although Commerce "enjoys substantial freedom to interpret and clarify its antidumping duty orders . . . it may not change them." *Ericsson GE Mobile Commc'ns v. United States,* 60 F.3d 778, 782 (Fed. Cir. 1995).

## **LEGAL FRAMEWORK FOR SCOPE DETERMINATION**

Section 731 of the Tariff Act of 1930 provides that, in order to impose AD duties, two separate tests must both be satisfied. First, Commerce must investigate and make an affirmative final determination that a "class or kind" of merchandise is being sold in the United States at LTFV. 19 U.S.C. § 1673(1) (2006). Second, the ITC must find that a U.S. industry is being materially injured or is threatened by material injury because of the sales at LTFV. *Id.* § 1673(2).

Upon completion of an antidumping duty investigation and a finding that merchandise has been sold at LTFV, Commerce issues an antidumping duty order that "includes a description of the subject merchandise, in such detail as the administering authority deems necessary." *Id.* § 1673e(a)(2). Commerce's regulations mandate that antidumping orders be written in general

language, which often renders the order's scope ambiguous.  19 C.F.R. § 351.225(a) (2006); *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed. Cir. 2002).   Following publication of the order, often "[i]ssues arise as to whether a particular product is included within the scope" of an AD order.  19 C.F.R. § 351.225(a).  Thus, Commerce may initiate, either on its own or based on the petition of an interested party, an inquiry into whether the scope of an antidumping duty order covers particular merchandise.  *Id.*

When determining the scope of an antidumping order, Commerce follows the three-step process the Federal Circuit established in *Duferco*.  *See Arcelormittal*, 2011 Ct. Int'l Trade LEXIS 82 at *6 (citing *Duferco*, 296 F.3d at 1096–97).  First, Commerce looks to the scope language of the order itself.  *Duferco*, 296 F.3d at 1097.  The Federal Circuit has clarified that "a predicate for the interpretive process is language in the order that is subject to interpretation."  *Id.*  Thus, in order to move to the second step of the interpretive process, there must be language in the order that can be interpreted to include the product at issue.  *Laminated Woven Sacks Comm. v. United States*, 34 CIT __, 716 F. Supp. 2d 1316, 1326 (2010).

Second, if there is language in the order that could be interpreted to include the product, Commerce considers "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the [ITC]."  19 C.F.R. § 351.225(k)(1).

Third, if the factors considered under section 351.225(k)(1) are not dispositive, Commerce then evaluates the product according to the five factors set forth in section 351.225(k)(2): "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the

ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed." *Id.* § 351.225(k)(2).

**DISCUSSION**

This case presents an important question involving "step one" of Commerce's three-step analysis: how does Commerce determine whether the AD order contains scope language that is "subject to interpretation"? *See Duferco*, 296 F.3d at 1097 (noting that "a predicate for the interpretive process is language in the order that is subject to interpretation"). Neither statute nor Commerce's regulations specify precisely how Commerce must determine whether the terms of the order are subject to interpretation. However, Commerce's conclusion must be supported by substantial evidence. *See Allegheny Ludlum*, 24 CIT at 479, 112 F. Supp. 2d at 1165 ("It is . . . well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence.").

I. **Commerce's decision that the scope language encompasses Patterson's product is not supported by substantial evidence**

Plaintiff contends that the scope language of the Order was "language in the order subject to interpretation" and therefore, under *Duferco*, Commerce should have moved to the second step of its interpretive process. *Duferco*, 296 F.3d at 1097. Further, Patterson claims that Commerce refused to consider or discuss evidence that significantly supported a conclusion that its coil rod was not included in the scope of the antidumping order. Patterson argues that

Commerce's decision, based solely on the language of the Order, is not supported by substantial evidence.

The government relies heavily on *Duferco* and *Tak Fat* for the proposition that if Commerce determines that the language of the order is unambiguous and dispositive, then it is not required to consider the petition or administrative proceedings or the other factors set forth in 19 C.F.R. § 351.225(k)(1). Gov't's Br. at 11–12 (citing *Duferco*, 296 F.3d at 1097 (finding that review of the petition and investigation "cannot substitute for the language in the order itself"); *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005) (stating that the "language of the order determines the scope of an antidumping duty order")). Thus, the Government argues that if Commerce finds that the "terms of the order are dispositive, then the order governs." *Polites*, 35 CIT__, __, 780 F. Supp. 2d at 1356–57.

The government's reliance on *Duferco* is misplaced. The Government misconstrues the Federal Circuit's rulings and is essentially arguing that if Commerce, looking at the language of the order alone, concludes that the language unambiguously includes a product, it may completely disregard all evidence to the contrary. That is not an accurate interpretation of *Duferco*'s holding.

*Duferco* addressed whether Commerce could find merchandise to be within the scope of an AD order when that merchandise was *not* included in the language of the AD order, but *was* included in the underlying petitions. In that case, the product was not covered by the scope language in the final order. Nevertheless, Commerce found that the product fell within the scope of the order based on the language of the underlying petitions and because the product was not

expressly excluded in the final order. The court emphasized that there was "no claim" that the "language of the 1993 final orders themselves [could] be interpreted to include [plaintiff's] product" even though the original petition did include the plaintiff's product. *Id.* at 1097. Because there was *no* language in the final order that could be interpreted to include the plaintiff's product, Commerce's determination impermissibly modified the scope of the orders and was not in accordance with law. *Id.* The Federal Circuit reasoned that the order language trumps the language of the petition because the omission or inclusion of language in the later stage of the administrative proceedings must be significant. Thus, the court clarified that "a predicate for the interpretive process is language in the order that is subject to interpretation." *Id.*

Here, in contrast to *Duferco*, the language in the AD order *can* be interpreted to include the products. Because there is "language in the order that is subject to interpretation," Commerce must move to the second step of its interpretive process and consider the section 351.225(k)(1) factors to determine whether the scope language includes Patterson's product. *Id.*

The Government argues that Commerce need not move to the second step of its interpretive process unless it finds that the scope language is "ambiguous." However, many cases since *Duferco* have made it abundantly clear that Commerce can—and routinely does—resort to various factors in 19 C.F.R. § 351.225(k)(1) to determine the meaning of scope language in an antidumping order without an explicit finding of ambiguity. *Tak Fat*, 396 F.3d at 1378; *Laminated Woven Sacks*, 34 CIT at __, 716 F. Supp. 2d at 1326; *Arcelormittal*, 2011 Ct. Int'l Trade LEXIS 82.

Interestingly, in a case before this Court in 2010, the government successfully argued that *Duferco* did not require Commerce to find the language ambiguous before consulting the 19 C.F.R. 351.225(k)(1) factors. In that case, the plaintiff claimed that Commerce had improperly considered the underlying petition and investigations without first finding the scope language to be ambiguous. The court summarized the government's response to this claim:

> The Department contends that "*Duferco* does not stand for the proposition that Commerce is required to make a finding of ambiguity before it can interpret the scope language in accordance with 19 C.F.R. § 351.225(k)(1)." To the contrary, says Defendant, there is nothing in the holding of *Duferco* that requires Commerce to engage in a "stepped analysis" in which it must first make an explicit determination of ambiguity. Commerce distinguishes *Duferco* on the grounds that the issue for the Federal Circuit was whether the Department could find that "a product is within the scope of an antidumping order on the basis that there is no language in the order specifically excluding the product at issue. In fact, *Duferco* made clear that the petition and investigation "may provide valuable guidance as to the interpretation of the final order." Thus, Defendant concludes, given that the [language] is subject to interpretation, Commerce properly extended its scope analysis to those factors listed in section 351.225(k)(1).

*Laminated Woven Sacks*, 34 CIT at __, 716 F. Supp. 2d at 1324–25 (internal citations omitted). Ruling for the government, the court stated that "[a]ll that is necessary before Commerce may consider secondary documents from the original investigation is 'language in the order that is subject to interpretation.'" *Id.* at 1326 (quoting *Duferco*, 296 F.3d at 1097). Moreover, the court noted that an explicit finding of ambiguity is not necessary for Commerce to consult secondary documents. *Id.*

More recently, both this Court and the Federal Circuit have approved of Commerce resorting to the CFR factors without first finding that the language is ambiguous.

In *Arcelormittal*, this Court approved of Commerce using the (k)(1) and (k)(2) factors to determine whether the scope language was ambiguous. *Arcelormittal,* 2011 Ct. Intl. Trade LEXIS 82 at *30. In *Tak Fat*, the Federal Circuit followed *Duferco*'s rule that "the language of the order, not the petition, controls," and at the same time looked to the underlying petition to determine the precise meaning of the language in the order. *Tak Fat,* 396 F.3d at 1386. In that case, the scope language of the petition included a product that was not included in the language of the final order. The court considered both the language of the order and the language of the underlying petition, in order to determine whether language excluded from the final order was significant. *Id.*

Here, the scope language in the AD order could include Patterson's coil rod and is thus subject to interpretation. Under *Duferco*, this is sufficient for Commerce to look to the underlying petitions and investigation for aid in interpreting the order under 19 C.F.R. § 351.225(k)(1). 296 F.3d at 1097.

Moreover, Patterson's argument that Commerce did not find sales at LTFV and that the ITC did not make an injury determination for U.S. producers of coil threaded rod provides significant support for its argument that its product is not properly within the scope of the antidumping order. *See Allegheny Ludlum*, 24 CIT at 479, 112 F. Supp. 2d at 1165. Patterson's evidence "on its face, provides significant support for an alternative conclusion." *Id.* "It is . . . well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence." *Id.*; *see also Arcelormittal*, 2011 Ct. Intl.

Trade LEXIS 82 at *36 (Commerce's scope determination must be supported by substantial evidence). "This failure [to consider evidence] alone renders the Final Scope Ruling unsupported by substantial evidence." *Mid Continent Nail Corp. v. United States*, 35 CIT __, __, 770 F. Supp. 2d 1372, 1379 (2011). Because Commerce totally failed "to consider or discuss" the relevant evidence that Patterson presented, we find that Commerce's determination is unsupported by substantial evidence. *Allegheny Ludlum*, 24 CIT at 479, 112 F. Supp. 2d at 1165; *Mid Continent Nail*, 770 F. Supp. 2d at 1379.

**II.   If there is no finding of injury or sales at LTFV for Patterson's product, Commerce's determination is not in accordance with law**

Plaintiff contends that Commerce's scope determination unlawfully expanded the scope of the Order. Patterson notes that coil threaded rod was not part of the domestic industry identified in Vulcan's petition. Further, Plaintiff emphasizes that none of the multiple U.S. companies that produce coil threaded rod were included in Commerce's LTFV determination or in the ITC's injury determination. In support of its argument, Plaintiff also offers evidence that coil rod has a different end use, market, and production industry than steel threaded rod.

Commerce's refusal to consider the evidence that Patterson presented to it creates a distinct danger that its determination will unlawfully change the scope of the order. It is well-established that an antidumping order must be supported by an ITC injury determination and a determination that there have been sales at LTFV. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (noting that 19 U.S.C. § 1673 requires an injury determination by the ITC before the imposition of antidumping duties). "A purpose of the investigation is to determine what merchandise should be included in the final order. Commerce's final

determination reflects the decision that has been made as to which merchandise is within the final scope of the investigation and is subject to the order." *Duferco*, 296 F.3d at 1096. Although Commerce, after investigating a product, may determine that it does not fall into the scope of the final order, Commerce cannot do the reverse. Commerce cannot include in the final order merchandise for which there was no investigation and for which there was no determination of sales at LTFV or determination of injury. *See Allegheny Bradford*, 28 CIT at 848, 342 F. Supp. 2d 1173, 1187–88 ("Commerce's discretion to define and clarify the scope of an investigation is limited . . . ,which caution[s] against including a product that was understood to be excluded at the time the investigation began."). In *Allegheny Bradford,* the court concluded that Commerce's ruling was not in accordance with law "[b]ecause Commerce cannot interpret an antidumping order in a manner contrary to the clear terms that were a consistent part *of the investigation*." *Id.* at 851, 342 F. Supp. 2d at 1190–91 (emphasis added).

Here, Commerce refused to even consider evidence that Patterson's steel coil rods were not included in the ITC's injury determination or Commerce's LTFV determination. Although Commerce may clarify an AD order, it may not expand the scope of the order by including products for which there is no finding of injury or sales at LTFV. *Id.* at 842, 342 F. Supp. 2d at 1183. Because Commerce's interpretation of the scope of the AD order may include a product not subject to a finding of LTFV or injury, the determination may not be "in accordance with law." *See* 19 U.S.C. § 1673(1)–(2) (requiring findings of injury and sales at LTFV in order to impose AD duties). Commerce must consider this issue.

### III. Commerce failed to adequately explain the reasons for its determination

Plaintiff argues that Commerce failed to sufficiently address Plaintiff's objections raised during the determination and that Commerce either based its reasoning on insufficient analysis or failed to adequately explain its analysis. Relying on the language of the order alone, Commerce determined that the order was dispositive. Commerce simply explained that "although Patterson argues that coil rod was not considered in the petition, investigation, or ITC proceedings, the Department does not find that this factor outweighs the scope language, which indicates that coil rod was within the scope of the Order." *Final Ruling* at 5.

Commerce failed to sufficiently explain its determination that the scope language alone was unambiguous and dispositive. Because the evidence Patterson presents indicates that the scope language was subject to interpretation, a more thorough explanation of Commerce's decision-making process was necessary here. *See NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("Commerce must explain the basis for its decisions; while its explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernible to a reviewing court.").

Properly explaining the basis for its decision is especially important in a case like this, in which a product's physical description fits within the language of the scope order but for which there is arguably no determination of injury or of sales at LTFV. Because all antidumping orders must be supported by an injury determination and determination of sales at LTFV, Commerce must at least address Patterson's arguments. Instead, "Commerce addressed none of [Patterson's] arguments on this issue and did not expressly rely on" any other basis such as the

petition or underlying investigations. *Mid Continent Nail*, 770 F. Supp. 2d at 1379. "A ruling from Commerce with such infirmities will normally not be affirmed." *Id.*; *see also USX Corp. v. United States*, 11 CIT 82, 88, 655 F. Supp. 487, 492 (1987) ("The court cannot defer to a decision which is based on inadequate analysis or reasoning.").

Commerce's explanation failed to address the issue of whether Patterson's steel coil rod was included in a finding of sales at LTFV or in an injury determination. Rather, Commerce simply referred to the scope language without discussing what, if any, effect Patterson's arguments may have had on its determination. Without more analysis or explanation, the Court is simply left to conclude that Commerce ignored this seemingly important record evidence. The Court will not confirm a determination "with such infirmities." *See Mid Continent Nail*, 770 F. Supp. 2d at 1379.

## **CONCLUSION**

Remand is necessary so that Commerce may fully consider whether the antidumping duty order includes Patterson's steel coil rod. Although the scope order contained language subject to interpretation under *Duferco*, Commerce refused to consider the 19 C.F.R. § 351.225(k)(1) factors and evidence relevant thereto that Patterson presented to it. Therefore, its determination that the scope language includes Patterson's coil rod is not in accordance with law and unsupported by substantial evidence. Further, Commerce refused to consider Patterson's arguments that its product was not subject to a finding of injury or sales at LTFV. Moreover, Commerce failed to adequately explain the reasoning upon which it based its determination.

Court No. 11-00192                                                                                                     Page 18

Therefore, the Court finds that a reconsideration of all evidence regarding the meaning of the scope language, as well as a more thorough explanation of Commerce's decision, is necessary.

The Court remands Commerce's determination and orders it to reconsider whether the language of the order includes Patterson's coil rod, following the interpretive procedure established in 19 C.F.R. § 351.225(k)(1).  For the foregoing reasons, the Plaintiff's Motion for Judgment on the Agency Record is granted.  The Court **REMANDS** the Final Ruling to Commerce for reconsideration of its decision that Patterson's steel coil rod falls within the scope of the AD order, and such proceedings shall be consistent with the opinions of this Court and the Federal Circuit.

## **ORDER**

Upon consideration of all papers and proceedings herein, it is hereby

**ORDERED** that the final determination of the United States Department of Commerce, published as *Certain Steel Threaded Rod from the People's Republic of China: A.L. Patterson Final Scope Ruling*, A-570-932 (May 24, 2011) (Final Ruling) be, and hereby is, REMANDED to Commerce for redetermination as provided in this Opinion and Order; it is further

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record be, and hereby is, GRANTED as provided in this Opinion and Order; it is further

**ORDERED** that Commerce, on remand, shall reconsider its decision that Patterson's steel coil rod falls within the scope of the anti-dumping order; it is further

**ORDERED** that Commerce shall have ninety days from the date of this Opinion and Order in which to file its redetermination upon remand ("Second Remand Redetermination"), which shall comply with all directives in this Opinion and Order; that the Plaintiffs shall have thirty days from the filing of the Second Remand Redetermination in which to file comments thereon; and that Commerce shall have thirty days from the filing of Plaintiff's comments to file comments.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: August 6, 2012
New York, New York